David J. Bodney (006065)
bodneyd@ballardspahr.com
Matthew E. Kelley (037353)
kelleym@ballardspahr.com
Kennison Lay (037098)
layk@ballardspahr.com
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone:  602.798.5400
Facsimile:  602.798.5595

Jared G. Keenan (027068)
Benjamin L. Rundall (031661)
K. M. Bell (037611)
American Civil Liberties Union Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
jkeenana@acluaz.org
brundall@acluaz.org
kmbell@acluaz.org

*Attorneys for Plaintiffs Arizona Broadcasters Association; Arizona Newspapers Association; Fox Television Stations, LLC; Gray Media Group, Inc. d/b/a KTVK-KPHO and d/b/a KOLD; KPNX-TV, a division of Multimedia Holdings Corp.; NBCUniversal Media, LLC; National Press Photographers Association; Phoenix Newspapers, Inc.; Scripps Media, Inc. d/b/a KGUN-TV and d/b/a KNXV-TV; and States Newsroom/Arizona Mirror*

Esha Bhandari (*pro hac vice* application forthcoming)
Vera Eidelman (*pro hac vice* application forthcoming)
Shreya Tewari (*pro hac vice* application forthcoming)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
veidelman@aclu.org
ebhandari@aclu.org
stewari@aclu.org

*Attorneys for Plaintiff ACLU of Arizona*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Broadcasters Association, an Arizona nonprofit corporation; American Civil Liberties Union of Arizona, an Arizona nonprofit corporation; Arizona Newspapers Association, an Arizona nonprofit corporation; Fox Television Stations, LLC, a Delaware limited liability company; Gray Media Group, Inc., a Delaware corporation, d/b/a KTVK-KPHO and d/b/a KOLD; KPNX-TV, a division of Multimedia Holdings Corp., a South Carolina corporation; NBCUniversal Media, LLC, a Delaware limited liability company; National Press Photographers Association, a New York nonprofit corporation; Phoenix Newspapers, Inc., an Arizona corporation; Scripps Media, Inc., an Ohio corporation, d/b/a/ KGUN-TV and d/b/a KNXV-TV; and States Newsroom/Arizona Mirror, a District of Columbia nonprofit corporation;<br><br>Plaintiffs,<br><br>vs.<br><br>Mark Brnovich, in his official capacity as Attorney General for the State of Arizona; Rachel Mitchell, in her official capacity as Maricopa County Attorney; and Paul Penzone, in his official capacity as Maricopa County Sheriff;<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

# PRELIMINARY STATEMENT

1. A newly enacted Arizona statute known as House Bill 2319 ("HB2319") makes it a crime to record video of "law enforcement activity" within eight feet of that activity after being ordered to stop by law enforcement. On its face, this statute infringes the clearly established First Amendment rights of Plaintiffs and everyone else in Arizona to record the public activities of law enforcement officers. By allowing police officers to arrest and punish people for simply recording video of their actions, the law creates an unprecedented and facially unconstitutional content-based restriction on speech about an important governmental function. Plaintiffs – Arizona news organizations and associations

2

of journalists, joined by a nonprofit focused on protecting Arizonans' constitutional rights – bring this lawsuit to prevent Arizona from trampling on their rights to report news, document the activities of public servants, and hold police accountable for their actions toward the people they are sworn to protect and serve.

## JURISDICTION AND VENUE

2. Plaintiffs bring this action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 for violations of civil rights under the First and Fourteenth Amendments to the United States Constitution.

3. This case presents a federal question within this Court's jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. §§ 1331 and 1343.

4. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper in this Court under 28 U.S.C. § 1391 because the parties reside in this District and a substantial part of the events giving rise to this claim occurred in this District.

## PARTIES

6. Plaintiff Arizona Broadcasters Association ("ABA") is an Arizona 501(c)(6) non-profit corporation that acts as the official trade association for Arizona's local radio and television stations. The ABA's membership includes more than 225 radio stations, television stations and associate members. The ABA's members gather and disseminate news to the public, both online and via broadcast, including video recordings of law enforcement activities. The ABA has expended resources to oppose passage of HB2319 and will expend resources in response to its passage.

7. Plaintiff American Civil Liberties Union of Arizona Foundation ("ACLU of Arizona") is an Arizona non-profit, nonpartisan organization with a mission to defend and preserve the individual rights and liberties guaranteed by the United States Constitution. Many of ACLU of Arizona's members, who record law enforcement activities at protests and elsewhere in public, will be directly affected by HB2319 and ACLU of Arizona will have to expend resources (and, indeed, already has spent resources) in response to

3

HB2319's passage and its future use to prosecute journalists or private citizens in the exercise of their First Amendment rights.

8. Plaintiff Arizona Newspapers Association ("ANA") is an Arizona non-profit corporation that represents more than 80 newspapers with the purpose of improving the quality of newspapers throughout Arizona. The ANA's members gather and disseminate news to the public, both in print and online, including video recordings of law enforcement activities. The ANA has expended resources to oppose passage of HB2319 and will expend resources in response to its passage.

9. Plaintiff Fox Television Stations, LLC is a Delaware limited liability company that indirectly owns and operates KSAZ-TV, the local Fox television network affiliate station in Phoenix. KSAZ gathers and disseminates news to the public, both in broadcast form and online at www.fox10phoenix.com, including video recordings of law enforcement activities.

10. Plaintiff Gray Media Group, Inc. is a Delaware corporation. Gray Media Group, Inc. owns and operates television stations in Arizona, including KPHO-TV, the local CBS television network affiliate station in Phoenix and its sister station KTVK-TV; and KOLD-TV, the local CBS television network affiliate station in Tucson. Gray's stations gather and disseminate news to the public, both in broadcast form and online at www.azfamily.com and www.kold.com, including video recordings of law enforcement activities.

11. Plaintiff KPNX-TV is a division of Multimedia Holdings Corp., a South Carolina corporation. KPNX, the local NBC affiliate in Phoenix, gathers and disseminates news to the public, both in broadcast form and online at www.12news.com, including video recordings of law enforcement activities. KPNX has expended resources opposing HB2319's passage and will expend resources addressing its unconstitutionality.

12. Plaintiff NBCUniversal Media, LLC is a Delaware limited liability company. NBCUniversal's subsidiary, Telemundo Arizona, gathers and disseminates news to the public, both in broadcast form on KTAZ-TV, the Telemundo television network affiliate in

4

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Phoenix, and online at www.telemundoarizona.com, including video recordings of law enforcement activities.

13. Plaintiff National Press Photographers Association ("NPPA") is a New York 501(c)(6) non-profit organization dedicated to the advancement of visual journalism in its creation, editing and distribution. NPPA's members include television and still photographers, editors, students and representatives of businesses that serve the visual journalism industry. NPPA has members in every state, including Arizona. HB2319 will chill NPPA members in Arizona and those from other states assigned to cover events in Arizona from exercising their First Amendment rights by making them reluctant to record video of police activity. The organization has expended resources opposing HB2319's passage and will expend resources addressing its unconstitutionality.

14. Plaintiff Phoenix Newspapers, Inc. ("PNI") is an Arizona corporation that publishes *The Arizona Republic* and azcentral.com. PNI gathers and disseminates news to the public, both in print and online at www.azcentral.com, including video recordings of law enforcement activities. PNI has expended resources opposing HB2319's passage and will expend resources addressing its unconstitutionality.

15. Plaintiff Scripps Media, Inc. is an Ohio corporation. Scripps Media, Inc. owns and operates KNXV-TV ("ABC15"), the local ABC television network affiliate station in Phoenix, and KGUN-TV ("KGUN9"), the local ABC television network affiliate station in Tucson. KNXV-TV and KGUN gather and disseminate news to the public, both in broadcast form and online at www.ABC15.com and www.KGUN9.com, including video recordings of law enforcement activities.

16. Plaintiff States Newsroom/Arizona Mirror ("Arizona Mirror") is the Arizona affiliate of States Newsroom, a District of Columbia 501(c)(3) nonprofit organization that oversees a network of news organizations covering state government in 29 states. Arizona Mirror gathers and disseminates news to the public on its website, www.azmirror.com, including video recordings of law enforcement activities.

17. All Plaintiffs other than ACLU of Arizona are referred to herein as the "News

Organization Plaintiffs."

18. Defendant Mark Brnovich is the Attorney General for the State of Arizona, and is named in his official capacity only. As the Attorney General, Mr. Brnovich is the chief law enforcement officer of the State of Arizona. A.R.S. § 41-192(A). By virtue of this position, Mr. Brnovich has the authority to enforce all of the laws of the State of Arizona, including HB2319.

19. Defendant Rachel Mitchell is the Maricopa County Attorney, and is named in her official capacity only. As the Maricopa County Attorney, Ms. Mitchell is the public prosecutor of Maricopa County and Ms. Mitchell has the authority to prosecute public offenses, including violations of HB2319. A.R.S. § 11-532(A).

20. Defendant Paul Penzone is the Maricopa County Sheriff and is named in his official capacity only. As the Maricopa County Sherriff, Mr. Penzone has the authority to arrest persons who attempt to commit or who have committed a public offense, including a violation of HB2319. A.R.S. § 11-441(A).

## STATEMENT OF FACTS
## HB2319

21. On June 23, 2022, the Arizona Legislature enacted HB2319, codified at A.R.S. § 13-3732. HB2319 provides:

**13-3732. Unlawful video recording of law enforcement activity; classification; definition**

> A. It is unlawful for a person to knowingly make a video recording of law enforcement activity if the person making the video recording is within eight feet of where the person knows or reasonably should know that law enforcement activity is occurring, either receives or has previously received a verbal warning from a law enforcement officer that the person is prohibited from making a video recording of a law enforcement activity within eight feet of the activity and continues to make a video recording of the law enforcement activity within eight

6

feet of the activity. If the law enforcement activity is occurring in an enclosed structure that is on private property, a person who is authorized to be on the private property may make a video recording of the activity from an adjacent room or area that is less than eight feet away from where the activity is occurring, unless a law enforcement officer determines that the person is interfering in the law enforcement activity or that it is not safe to be in the area and orders the person to leave the area.

B.  Notwithstanding subsection A of this section, a person who is the subject of police contact may record the encounter if the person is not interfering with lawful police actions, including searching, handcuffing or administering a field sobriety test. The occupants of a vehicle that is the subject of a police stop may record the encounter if the occupants are not interfering with lawful police actions.

C.  This section does not establish a right or authorize any person to make a video recording of law enforcement activity.

D.  A violation of this section is a class 3 misdemeanor.

E.  For the purposes of this section, "law enforcement activity" means any of the following:

  1.  Questioning a suspicious person.
  2.  Conducting an arrest, issuing a summons or enforcing the law.
  3.  Handling an emotionally disturbed or disorderly person who is exhibiting abnormal behavior.

22. HB2319 was sponsored by Arizona State Representative John Kavanagh.

23. Representative Kavanagh has asserted in legislative hearings that HB2319 is directed at people who show up to police scenes and film police officers at a close distance while the officers are taking "enforcement actions," and that the bill's eight-foot requirement is intended to provide a "buffer" for officer and public safety. During the

House Republication Caucus on February 22, 2022, Representative Kavanagh suggested that HB2319 was necessary because it can be "dangerous" for a person to record video of law enforcement as the person videotaping may "distract or threaten" the officer.

24.  On or about March 15, 2022, the National Press Photographers Association, the Radio and Television Digital News Association, the Reporters Committee for Freedom of the Press, the Press Freedom Defense Fund, and twenty-three other organizations sent a letter to the Chair and Vice-Chair of the Arizona Senate Judiciary Committee in opposition to HB2319.  The letter argued that HB2319 violates the free speech and press clauses of the First Amendment and runs counter to the "clearly established right" to photograph and record police officers performing their official duties in a public place.

25.  Upon information and belief, on or about March 21, 2022, the Arizona Senate Rules attorney Chris Kleminich informed the Senate Rules Committee that HB2319 had serious constitutional problems and that additional amendments were needed to address these issues.  Specifically, according to audio published by PNI, Mr. Kleminich advised that HB2319 "does bring up questions relating to First Amendment and freedom of expression" because "recording of law enforcement activity has been recognized by federal courts as following within that First Amendment right."[1]  Mr. Kleminich told lawmakers that there are "reasons to be concerned about how a court will ultimately rule on this measure."[2]  Nevertheless, the Committee voted HB2319 to move forward.

26.  In light of these constitutional issues and effects on newsgathering activities, Plaintiffs expended substantial resources lobbying in the Arizona Legislature against the passage of HB2319.  Plaintiffs' lobbying efforts included, but were not limited to, the previously mentioned letter sent on or about March 15, 2022, attendance and testimony at

---

[1] Chelsea Curtis, *Bill banning recording of police moves through Arizona Senate. Here's why it's controversial*, ARIZ. REPUBLIC (March 28, 2022), https://www.azcentral.com/story/news/politics/legislature/2022/03/25/bill-banning-close-range-recordings-police-advances-az-senate/7172032001/.  The article also quotes Kleminich as saying: "This bill specifically talks about you can't record which is why I can be presumably as close as I want to the officer with my phone and my March Madness bracket whereas someone else it would be unlawful just by the act of recording."
[2] *Id.*

8

legislative hearings, and outreach to specific legislators to explain the constitutional and newsgathering concerns.

27. HB2319 passed in the Arizona Senate on June 23, 2022, and was signed into law by the Governor on July 6, 2022.

28. HB2319 will become effective on September 24, 2022.

### **HB2319's Infringement of First Amendment Rights**

29. HB2319 infringes on the News Organization Plaintiffs' ability to engage in core newsgathering activities protected by the First Amendment to the United States Constitution.

30. HB2319 also infringes the First Amendment rights of all people in Arizona to record the activities of police.

31. The News Organization Plaintiffs are comprised of entities and individuals that regularly engage in the gathering and dissemination of news in Arizona. Members of Plaintiff ACLU of Arizona frequently exercise their First Amendment right to record video of the activities of law enforcement. For all Plaintiffs, this includes recording within eight feet of police officers, which is often necessary or unavoidable to record clear footage or where the person recording cannot maintain an eight-foot distance, such as in crowds or on public sidewalks.

32. The official actions of law enforcement officers are a matter of vital public concern because the officers are government actors, funded by Arizonans' taxes, and information about their actions is necessary to keep the public informed, hold government actors accountable, and generally assure the exchange of ideas that is necessary to bring about political and social change in our democracy. In addition, crime occurring in Arizona is a newsworthy subject to those who live here.

33. In light of this public interest, the News Organization Plaintiffs often report directly on police activity, in addition to reporting on newsworthy events where police happen to be present, such as political rallies, protest marches, festivals, sporting events, and appearances by high-ranking public officials. This reporting is protected by the First

Amendment.

34. As part of their reporting, journalists working for the News Organization Plaintiffs often record videos of what they are observing, including videos of law enforcement officers acting within the scope of their official duties. The News Organization Plaintiffs also often broadcast and publish video recordings of newsworthy law enforcement activities recorded by third parties such as bystanders. Such videos can supplement news reports and contribute to a more fulsome explanation of the underlying activity. The recording of these videos is also protected by the First Amendment.

35. Members of Plaintiff ACLU of Arizona also exercise their First Amendment right to record officers conducting their official duties. For example, they record officers interacting with and employing force against protesters. ACLU members also record video of their personal interactions with law enforcement to provide an accurate record of those encounters and to deter police misconduct.

36. Once HB2319 goes into effect, Plaintiffs – and anyone else in Arizona – risk arrest and prosecution if they video record law enforcement activity.

37. By criminalizing the recording of police officers from a certain distance, HB2319 creates a new risk of arrest and prosecution for activity that is protected by the First Amendment to the U.S. Constitution. HB2319 is a content-based speech restriction because it prohibits video recording of only one topic: law enforcement activity.

38. Furthermore, HB2319 is a content-based speech restriction because people within eight feet of police officers are not subject to arrest if they are doing other things on their phone besides recording video, such as catching Pokémon, texting, or even just taking still pictures.

39. In order to avoid violations of HB2319, the News Organization Plaintiffs will have to forgo, or limit, their reporting on issues and events that they would otherwise deem worthy of coverage.

40. Thus, HB2319 frustrates the News Organization Plaintiffs' mission and purpose to gather and disseminate news to the public and chills their exercise of their First

Amendment rights.

41. Similarly, to avoid violating HB2319, members of the ACLU of Arizona will have to forego or limit their recording video of police activities, thus frustrating the ACLU of Arizona's mission of advocating for police accountability and for the free exercise of constitutional rights.

42. HB2319 is not necessary because Arizona already has other laws at its disposal to address interference with police officers. For example, if a person "obstruct[s], "impair[s], or hinder[s]" a police officer acting "under color of his official authority," which a person could do by deliberately distracting or threatening the officer, that person can be charged with a class 1 misdemeanor pursuant to A.R.S. § 13-2404. Similarly, A.R.S. § 13-2402 also prohibits a person from "obstructing governmental operations," including by "knowingly obstruct[ing], impair[ing], or hinder[ing]" police officers acting in the scope of their official authority.

43. Compliance with HB2319 will be particularly difficult in fluid and crowded situations, such as protests, where the eight-foot requirement may be uniquely cumbersome. For example, if a reporter is in a crowd taking video of a protest, and a police officer walks towards the reporter and breaches the eight-foot distance while the reporter is unable to move further away in the crowd, that reporter might be arrested for violating HB2319. Thus, the News Organization Plaintiffs' ability to report on protests as matters of public concern will be severely limited by HB2319.

44. Because public sidewalks in Arizona can be as narrow as four feet wide, maintaining an eight-foot distance from law enforcement activity while remaining lawfully on the sidewalk will be impossible in some situations.

45. Likewise, those recording video of police activity could face contradictory orders from different law enforcement officers regarding whether and from where they can record, making it impossible to comply with those orders without violating HB2319.

46. Furthermore, there are ambiguities in HB2319 that make compliance difficult and further chill Plaintiffs' ability to engage in First Amendment-protected activity.

11

47. For example, "law enforcement activity" is defined very broadly, to include "enforcing the law." This broad definition could cover literally any action by a police officer in the course of their official duties. In an abundance of caution to avoid a potential violation of HB2319, Plaintiffs who are recording video at the scene of a newsworthy event may decide to comply with the broadest possible reading and stay more than eight feet away from any and all police officers, no matter what the officers may be doing. This will further limit Plaintiffs' ability to engage in First Amendment-protected activity.

48. Another ambiguity arises with respect to what constitutes a "verbal warning," and the length of time that satisfies the requirement of "previously." If a journalist or member of the public is warned to stop recording the day before, it is unclear if they can be arrested for a violation twenty-four hours later. If one officer allows a journalist or member of the public to record from where they are standing, it is unclear if another officer can come up to the journalist or member of the public, tell them to stop recording, and then arrest them if they don't comply fast enough. Again, because the answers are unclear, many of Plaintiffs' members and employees intend to obey the broadest possible reading in order to limit risk of criminal prosecution, further limiting their ability to engage in newsgathering and recording of law enforcement activity protected by the First Amendment.

49. A further ambiguity arises from the fact that the statute does not provide any criteria for law enforcement officers to determine when to issue a no-recording order. This ambiguity allows law enforcement officers to order a halt to video recording and/or arrest bystanders for video recording when they are not violating any other law or endangering or interfering with officers' duties.

50. In light of these ambiguities and the blatant constitutional issues inherent in HB2319, Plaintiffs will have to continue expending resources to address this law. For example, Plaintiffs have expended resources lobbying the state legislature in attempting to prevent passage of HB2319. Further, if Plaintiffs' employees or members are arrested and prosecuted for a violation of HB2319, Plaintiffs will expend resources on the individuals'

legal defense. Plaintiff ACLU of Arizona often files amicus briefs in such situations, and may also choose to represent certain individuals directly.

51. Furthermore, the ACLU of Arizona has already and will continue to expend resources in educating the public about the law's effects and the risks it poses to the exercise of constitutional rights in Arizona. The ACLU of Arizona may create know-your-rights materials specific to HB2319, provide legal counsel to individuals and organizations, and continue to lobby against the repeal of this unconstitutional law.

## **CAUSE OF ACTION**

## **VIOLATION OF FIRST AMENDMENT RIGHTS**
## **42 U.S.C. § 1983**

52. Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

53. In the following paragraphs, references to the First Amendment include the First Amendment as applied to the states through the Fourteenth Amendment.

54. Video recordings of law enforcement activity are speech and expressive activity related to a matter of public concern. This activity is therefore protected by the First Amendment.

55. HB2319 violates the First Amendment on its face because it criminalizes protected speech based on its content. HB2319 prohibits video recording of only one topic – law enforcement activity.

56. HB2319 violates the First Amendment because it does not serve a compelling State interest and is not narrowly tailored to protect any such interest. To the extent Arizona intends HB2319 to serve the State's interest in prohibiting interference with law enforcement officers in the course of their duties, the set distance prohibition is insufficiently tailored to that interest. Moreover, there are multiple other state and municipal laws that achieve this same purpose, while burdening little to no speech, including but not limited to A.R.S. § 13-2404 (obstructing police officers), A.R.S. § 13-2402 (obstructing governmental operations), A.R.S. § 13-2904 (disorderly conduct), and

A.R.S. § 28-622 (failure to obey).

57. HB2319 violates the First Amendment because it is overinclusive and substantially overbroad.

## CAUSE OF ACTION

## VIOLATION OF FIRST AND FOURTEENTH AMENDMENTS (DUE PROCESS CLAUSE)

## 42 U.S.C. § 1983

58. Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

59. In the following paragraphs, references to the First Amendment include the First Amendment as applied to the states through the Fourteenth Amendment.

60. HB2319 is unconstitutionally vague on its face in violation of the First and Fourteenth Amendments, specifically the due process clause of the Fourteenth Amendment.

61. HB2319 is too vague to give a reasonable person of ordinary intelligence fair notice of what is prohibited.

62. HB2319 impermissibly delegates determinations of prohibited activity to law enforcement to decide on an ad hoc and subjective basis.

63. HB2319 operates to inhibit, and in fact criminalizes, the exercise of First Amendment freedoms, including the freedom to record the activities of law enforcement officers in public.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court enter judgment in their favor and against Defendants, and award the following relief:

A. Declare that HB2319 on its face violates the First Amendment of the United States Constitution, as applied to Arizona by the Fourteenth Amendment;

B. Declare that HB2319 on its face violates the Fourteenth Amendment of the United States Constitution;

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

1  C.  Preliminarily and permanently enjoin Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, from enforcing HB2319;

D.  Award Plaintiffs their costs and reasonable attorneys' fees in this action pursuant to 42 U.S.C. § 1988; and

E.  Grant Plaintiffs such other relief as this Court may deem just and proper.

DATED this 23rd day of August, 2022.

BALLARD SPAHR LLP

By: /s/ Matthew E. Kelley
David J. Bodney
Matthew E. Kelley
Kennison Lay
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

*Attorneys for Plaintiffs Arizona Broadcasters Association; Arizona Newspapers Association; Fox Television Stations, LLC; Gray Media Group, Inc. d/b/a KTVK-KPHO and d/b/a KOLD; KPNX-TV, a division of Multimedia Holdings Corp.; NBCUniversal Media, LLC; National Press Photographers Association; Phoenix Newspapers, Inc.; Scripps Media, Inc. d/b/a KGUN-TV and d/b/a KNXV-TV ; and States Newsroom/Arizona Mirror*

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF ARIZONA

By: /s/ Jared G. Keenan
K. M. Bell
Benjamin Rundall
Jared G. Keenan
3707 North 7th Street, Suite 235

Phoenix, AZ 85014

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

Esha Bhandari*
Vera Eidelman*
Shreya Tewari *
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
* *pro hac vice* application forthcoming

*Attorneys for Plaintiff American Civil Liberties Union Foundation of Arizona*

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400