David J. Bodney (006065)
bodneyd@ballardspahr.com
Matthew E. Kelley (037353)
kelleym@ballardspahr.com
Kennison Lay (037098)
layk@ballardspahr.com
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone:    602.798.5400
Facsimile:    602.798.5595
*Attorneys for Plaintiffs Arizona Broadcasters
Association; Arizona Newspapers
Association; Fox Television Stations, LLC;
Gray Media Group, Inc. d/b/a KTVK-KPHO
and d/b/a KOLD; KPNX-TV, a division of
Multimedia Holdings Corp.; NBCUniversal
Media, LLC; National Press Photographers
Association; Phoenix Newspapers, Inc.;
Scripps Media, Inc., d/b/a KGUN-TV and
KNXV-TV; and States Newsroom/Arizona
Mirror*

Jared G. Keenan (027068)
Benjamin L. Rundall (031661)
K. M. Bell (037611)
American    Civil    Liberties    Union
Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
jkeenana@acluaz.org
brundall@acluaz.org
kmbell@acluaz.org

Esha Bhandari (*pro hac vice* application
forthcoming)
Vera Eidelman (*pro hac vice* application
forthcoming)
Shreya Tewari (*pro hac vice* application
forthcoming)
American    Civil    Liberties    Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
ebhandari@aclu.org
veidelman@aclu.org
stewari@aclu.org

*Attorneys for Plaintiff ACLU of Arizona*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28

Ballard Spahr LLP  
1 East Washington Street, Suite 2300  
Phoenix, AZ 85004-2555  
Telephone: 602.798.5400

Arizona Broadcasters Association, an Arizona nonprofit corporation; American Civil Liberties Union of Arizona, an Arizona nonprofit corporation; Arizona Newspapers Association, an Arizona nonprofit corporation; Fox Television Stations, LLC, a Delaware limited liability company; Gray Media Group, Inc., a Delaware corporation, d/b/a KTVK-KPHO and d/b/a KOLD; KPNX-TV, a division of Multimedia Holdings Corp., a South Carolina corporation; NBCUniversal Media, LLC, a Delaware limited liability company; National Press Photographers Association, a New York nonprofit corporation; Phoenix Newspapers, Inc., an Arizona corporation; Scripps Media, Inc., an Ohio corporation, d/b/a/ KGUN-TV and d/b/a KNXV-TV; and States Newsroom/Arizona Mirror, a District of Columbia nonprofit corporation;

      Plaintiffs,

      vs.

Mark Brnovich, in his official capacity as Attorney General for the State of Arizona; Rachel Mitchell, in her official capacity as Maricopa County Attorney; and Paul Penzone, in his official capacity as Maricopa County Sheriff;

      Defendants.

Case No.:

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

(Expedited Oral Argument Requested)

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs move for a preliminary injunction restraining Defendants from enforcing House Bill 2319, codified at A.R.S. § 13-3732 ("HB2319"), which becomes effective on September 24, 2022, and criminalizes recording video of "law enforcement activity" within eight feet of that activity after being ordered to stop recording by law enforcement. This Motion is supported by the Complaint,

the following Memorandum of Points and Authorities, and the accompanying declarations and exhibits.  Given that the law is scheduled to go into effect on September 24, Plaintiffs respectfully request that this Court schedule an expedited hearing on this Motion as soon as possible.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Repeatedly over the past several years, video recordings of police activities have led the news, driven public debate and prompted administrative reforms, civil rights investigations and criminal charges.  From the killing of George Floyd in Minneapolis to the violent attacks on law enforcement on January 6, 2021 at the U.S. Capitol – video recordings by journalists and bystanders alike have provided the public with accurate depictions of events that foster vigorous debate and better understanding of the activities, both heroic and horrific, of those sworn to protect and serve us.  The First Amendment protects both the act of recording the public actions of public officials as well as the dissemination of those recordings, by the news media and members of the public.  Otherwise, an informed debate about the role of police in our society and how best to protect officers and the public they serve is more vulnerable to distortion and misinformation.

Unfortunately for Arizonans, lawmakers here have enacted a statute – scheduled to go into effect on September 24 – that blocks the exercise of the clearly established First Amendment right to record the actions of police.  The measure, known as HB2319, makes it a misdemeanor to record law enforcement activity within eight feet of that activity after being ordered to stop by a law enforcement officer.  Rather than banning the targeting, endangering or interfering with police – which several state and local statutes already proscribe – HB2319 criminalizes *only* the First Amendment-protected act of *recording* video, not any other activity.  The law is a content-based restriction on speech that fails strict scrutiny because it neither serves a compelling state interest nor is narrowly tailored to do so.  It independently violates due process because it is too vague to allow people to understand precisely how to avoid violating it and gives police unfettered authority to halt

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

recording and arrest people simply for exercising their First Amendment rights.

Were HB2319 to go into effect, it would severely chill the First Amendment activities of visual journalists whose job it is to document the newsworthy activities of public servants in public places, as well as anyone else who simply wants to record what law enforcement officers are doing.   It would therefore hamper the plaintiff news organizations in carrying out their mission to inform their audience about matters of public concern.   It would impair the ACLU of Arizona's mission to foster government accountability and protect the constitutional rights of Arizonans.  And it would encourage misconduct by officers who could arbitrarily halt recording and arrest those who would document that misconduct.   In short, Defendants should be enjoined from enforcing HB2319 because it is unconstitutional on its face, both as a content-based prohibition on First Amendment-protected activity and as an impermissibly vague criminal statute.

### Statement of Facts

On June 23, 2022, the Arizona Legislature enacted HB2319, codified at A.R.S. § 13-3732.  HB2319 provides:

**13-3732. Unlawful video recording of law enforcement activity; classification; definition**

A.   It is unlawful for a person to knowingly make a video recording of law enforcement activity if the person making the video recording is within eight feet of where the person knows or reasonably should know that law enforcement activity is occurring, either receives or has previously received a verbal warning from a law enforcement officer that the person is prohibited from making a video recording of a law enforcement activity within eight feet of the activity and continues to make a video recording of the law enforcement activity within eight feet of the activity. If the law enforcement activity is occurring in an enclosed structure that is on private property, a person who is authorized to be on the private property may make a video recording of the activity from an adjacent room or area that is less than eight feet away from where the activity is occurring, unless a law enforcement officer determines that the person is interfering in the law enforcement activity or that it is not safe to be in the area and orders the person to leave the area.

B.   Notwithstanding subsection A of this section, a person who is the subject of police contact may record the encounter if the person is not interfering with

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

4

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

lawful police actions, including searching, handcuffing or administering a field sobriety test. The occupants of a vehicle that is the subject of a police stop may record the encounter if the occupants are not interfering with lawful police actions.

C.   This section does not establish a right or authorize any person to make a video recording of law enforcement activity.

D.   A violation of this section is a class 3 misdemeanor.

E.   For the purposes of this section, "law enforcement activity" means any of the following:

    1.   Questioning a suspicious person.

    2.   Conducting an arrest, issuing a summons or enforcing the law.

    3.   Handling an emotionally disturbed or disorderly person who is exhibiting abnormal behavior.

HB2319 was signed into law by Governor Ducey on July 6, 2022, and will become effective on September 24, 2022.

On March 15, 2022, the National Press Photographers Association, the Radio and Television Digital News Association, the Reporters Committee for Freedom of the Press, the Press Freedom Defense Fund, and 23 other organizations sent a letter to the Chair and Vice-Chair of the Arizona Senate Judiciary Committee in opposition to HB2319.[1]   The letter argued that HB2319 violates the free speech and press clauses of the First Amendment and runs counter to the "clearly established right" to photograph and record police officers performing their official duties in a public place.[2]   The ACLU of Arizona had previously provided the Rules attorneys with a document explaining some of the constitutional problems with the bill.  In addition, there was extensive press coverage of the bill, which quoted not only the ACLU of Arizona but also other First Amendment lawyers who  raised concerns about the bill's constitutionality.[3]

---

[1]   A true and correct copy of this letter is available at https://nppa.org/sites/default/files/HB%202319%20Opposition%20Letter%2002-18-22%5B3%5D.pdf.

[2] *Id.*

[3] *See, e.g.*, Colleen Sikora, *Bill introduced in Arizona to limit how citizens film law enforcement*, ABC15 (Jan. 27, 2022) Chelsea Curtis, *Arizona House approves bill that bans*

On March 21, 2022, the Arizona Senate Rules attorney Chris Kleminich informed the Senate Rules Committee that HB2319 had constitutional problems and that additional amendments were needed to address them. Specifically, according to audio obtained by Plaintiff PNI,[4] Attorney Kleminich advised there was "constitutional tension," and "reasons to be concerned about how a court will ultimately rule on this measure."[5] Nevertheless, the Committee voted HB2319 to move forward.

If it goes into effect, HB2319 would have a dramatic chilling effect on Arizonans who wish to exercise their First Amendment right to record video of law enforcement officials performing their duties in public. Photojournalists and videographers, for example, will be deterred from recording police, particularly in fluid situations such as protests, for fear of being arrested, having the tools of their trade seized and facing fines or jail time simply for doing their jobs. *See* Declaration of Philip Mathews ("Mathews Decl.") ¶¶ 8-11; Declaration of Rick Davis ("Davis Decl.") ¶¶ 8-9; Declaration of Mickey Osterreicher ("Osterreicher Decl.") ¶ 42. For the same reasons, news executives will be deterred from sending journalists out into the field and will urge journalists to stay far away from law enforcement activity. *See* Declaration of Greg Burton ("Burton Decl.") ¶¶ 15-16; Mathews Decl. ¶ 8.

Further, HB2319 also will deter people wishing to exercise their First Amendment right to record video of law enforcement activities to document the actions of government officials, promote police accountability, deter misconduct, and protect themselves from unlawful arrest. Declaration of Jacob Raiford ("Raiford Decl.") ¶¶ 12-13, 15-19. This will also deprive news organizations and the public of newsworthy footage, because news

---

*close range recordings of police*, Arizona Republic (Feb. 25, 2022).

[4] Unlike every other legislative committee in Arizona, including the House Rules Committee, the Senate Rules Committee does not make the video recordings of its hearings publicly available.

[5] *Id*. Chelsea Curtis, *Bill banning recording of police moves through Arizona Senate. Here's why it's controversial*, Arizona Republic (March 28, 2022). The article also quotes Kleminich as saying: "This bill specifically talks about you can't record which is why I can be presumably as close as I want to the officer with my phone and my March Madness bracket whereas someone else it would be unlawful just by the act of recording."

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

organizations often publish newsworthy recordings of law enforcement activity taken by third parties.  Burton Decl. ¶ 14.

As a result, law enforcement accountability and the public's right to know what their government is doing will suffer.  Arizona news organizations will be less able to provide their audiences with video recordings of police activity – some of the most accurate and detailed information about law enforcement that is available.  As the bystander video of George Floyd's murder illustrates, news organizations rely not just on their own journalists to gather important images but also on recordings by non-journalists who happen upon newsworthy events such as fires, vehicle crashes, police searches, and arrests.  *Id.*  Without this accurate source of information, misinformation could spread more easily and the public's right to know about government activities will suffer as well.

The law also will hamper the efforts of non-journalists to document law enforcement activities they believe are questionable or unlawful; to discourage police misconduct; or simply record events important to themselves and their communities.  *See, e.g.*, Raiford Decl. ¶¶ 12-13, 15-19.  Having the ability to keep the public in the dark about their activities may encourage some errant peace officers to feel enabled to commit misconduct knowing that no one is watching.

**Legal Standard**

To obtain a preliminary injunction, the moving party must "establish (1) 'that [it] is likely to succeed on the merits,' (2) 'that [it] is likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'that the balance of equities tips in [its] favor,' and (4) 'that an injunction is in the public interest.'"  *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 730 (9th Cir. 2017) (quoting *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008)).  Here, all four factors weigh decisively in Plaintiffs' favor.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

## Legal Argument

## I.    PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS.

### A.    The First Amendment Protects the Right to Record Police Officers Performing their Duties.

HB2319 violates the First Amendment by criminalizing recording of "law enforcement activity" within eight feet of that activity after being warned to stop recording by law enforcement. The Ninth Circuit, along with the First, Third, Fifth, Seventh, Tenth, and Eleventh Circuits, have all recognized that there is a "clearly established" "First Amendment right to photograph and record matters of public interest" that specifically includes the right "to record law enforcement officers engaged in the exercise of their official duties in public places." *Askins v. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018) (citing *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 597 (7th Cir. 2012); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (recognizing that an individual video-recording policing of protest was "exercising his First Amendment right to film matters of public interest.")).[6] *See also Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) ("This is particularly true of law enforcement officials, who are granted substantial discretion that may be misused to deprive individuals of their liberties"); *Fields v. City of Philadelphia*, 862 F.3d 353 (3d Cir. 2017) ("[s]imply put, the First Amendment protects the act of photographing, filming, or otherwise recording police officers conducting their official duties in public."); *Turner v. Lieutenant Driver*, 848 F.3d 678 (5th Cir. 2017) ("First Amendment principles, controlling authority, and persuasive precedent demonstrate that a

---

[6] Other cases in the Ninth Circuit have held, based on *Fordyce*, that the right is "clearly established" for the purpose of overcoming qualified immunity. *See Redmond v. San Jose Police Dep't*, No. 14-CV-02345-BLF, 2017 WL 5495977, at *11 (N.D. Cal. Nov. 16, 2017) ("As of April 17, 2013, the date of the incident in question, the constitutional right to be free from retaliation while recording police activity in a public place was clearly established in the Ninth Circuit. *Fordyce*, 55 F.3d at 439."); *Crago v. Leonard*, No. 13-cv-531, 2014 WL 3849954, at *4 (E.D. Cal. Aug. 5, 2014), report and recommendation adopted, 2014 WL 4435954 (E.D. Cal. Sept. 9, 2014); *Adkins v. Limtiaco*, 537 Fed. Appx. 721, 722 (9th Cir. 2013) (right to photograph police officers in a public place is clearly established).

First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions"); *Irizarry v. Yehia*, 38 F.4th 1282, 1294-95 (10th Cir. 2022) (holding that the bystander plaintiff's "right to film the police" was "clearly established" and "beyond debate," and "falls squarely within the First Amendment's core purposes to protect free and robust discussion of public affairs, hold government officials accountable, and check abuse of power."); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (holding that plaintiffs "had a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct.").

As the Seventh Circuit explained in *Alvarez*, "[t]he act of making an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the resulting recording," because "[t]he right to publish or broadcast an audio or audiovisual recording would be insecure, or largely ineffective, if the antecedent act of making the recording is wholly unprotected." *Alvarez*, 679 F.3d at 595. The Ninth Circuit came to the same conclusion in striking down an Idaho "ag-gag" law prohibiting audiovisual recordings in agricultural facilities without the owner's consent, observing that arguing that the act of recording video is not protected by the First Amendment "is akin to saying that even though a book is protected by the First Amendment, the process of writing the book is not." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1203 (9th Cir. 2018).

As the Tenth Circuit noted in *Irizarry v. Yehia*, "[t]here is practically universal agreement that a major purpose of" the First Amendment 'was to protect the free discussion of governmental affairs.'" *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 755 (2011) (quoting *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (per curiam)). This purpose enables "the press . . . to serve as a powerful antidote to any abuses of power by governmental officials." *Mills v. Alabama*, 384 U.S. 214, 219 (1966). The same is true for any "watchdog of government activity," *Leathers v. Medlock*, 499 U.S. 439, 447 (1991), who can use video of police and other public officials as they perform their official duties to further debate on matters of public concern.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

The Supreme Court has consistently recognized a right to gather news, and recording police and other government officials is newsgathering.  For example, *Branzburg v. Hayes* held that "without some [First Amendment] protection for seeking out the news, freedom of the press could be eviscerated." 408 U.S. 665, 681 (1972).  *See also Houchins v. KQED, Inc.,* 438 U.S. 1, 10-11 (1978) ("[t]here is an undoubted right to gather news from any source by means within the law").  Recording video of police officers performing their duties and distributing those recordings to others also serves the public's First Amendment right "to receive information and ideas." *Richmond Newspapers v. Virginia*, 448 U.S. 555, 576 (1980) (citation omitted); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978) ("the First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw.").  Thus, HB2319 criminalizes First Amendment protected activity.

## B.   HB2319 Is a Content-Based Speech Restriction and Thus Subject to Strict Scrutiny.

Under the First Amendment, a government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972); *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). "When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions," and the law "imposes an especially heavy burden on the Government to explain" any content-based restrictions. *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000) (citations omitted).  Content-based speech restrictions, in other words, are subject to strict scrutiny. *See Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) (explaining that "[c]ontent-based laws are subject to strict scrutiny," while "content-neutral laws are subject to a lower level of scrutiny").[7]

---

[7] The plurality opinion in *Barr* was authored by Justice Kavanaugh, with three other justices joining in the portion of the opinion relevant to this case; Justice Gorsuch, in a separate opinion, concurred in the judgment and expressly agreed that the provision at issue there

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

"A regulation of speech is facially content based under the First Amendment if it 'target[s] speech based on its communicative content'—that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1471 (2022) (quoting *Reed*, 576 U.S. at 166). HB2319 is clearly content-based: it specifically targets video "recording of law enforcement activity" and nothing else.[8] For example, HB2319 would permit the filming of any other person in public—including other government officials performing their jobs in public—but not law enforcement, even from the same location using the same method.[9] In other words, the law "singles out specific subject matter for differential treatment" and is thus an "obvious" example of a content-based regulation of speech. *Reed*, 576 U.S. at 163, 169. *See also United States v. Stevens*, 559 U.S. 460, 468 (2010) (concluding a statute regulated expression based on its content when it prohibited "visual [and] auditory depiction[s] . . . depending on whether they depict conduct in which a living animal is intentionally harmed" (alterations in original)).[10]

As the Supreme Court reiterated in *Reed*, such differential treatment need not amount to viewpoint-based discrimination. It is "well established that "[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on

---

[8] Indeed, HB2319 appears to be the first content-based criminalization of recording police in the nation. For this reason, all of the federal Circuit Court opinions discussed above addressed generally applicable laws, such as wiretapping statutes, as applied to the recording of police.

"is a content-based restriction that fails strict scrutiny." *Barr*, 140 S. Ct. at 2364 (Gorsuch, J., concurring in the judgment).

[9] The issue in *Reed* was whether the Phoenix suburb could impose different rules for political signs and signs directing a person to an event compared to other signs; the Court found these distinctions to be content-based and struck them down.

[10] In addition, laws that cannot be "'justified without reference to the content of the regulated speech,'" or that were adopted by the government "because of disagreement with the message [the speech] conveys" are subject to strict scrutiny, even if they are facially content-neutral. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). It is clear from the legislative history that the purpose and intent of this law was to target groups that are critical of the police.

particular viewpoints, but also to prohibition of public discussion of an entire topic." *Reed*, 576 U.S. at 168-69 (quoting *Consolidated Edison Co. of N.Y. v. Public Serv. Comm'n of N. Y.*, 447 U.S. 530, 537 (1980)). That is precisely what HB2319 does with respect to "law enforcement activity." HB2319 does not forbid a person from approaching within eight feet of an officer generally, or approaching within eight feet of an officer while holding up a phone for some other purpose, such as catching a Pokémon, or video recording non-law enforcement activity, or being within eight feet of an officer taking a still photo,[1] or writing notes about what the officer is doing, or even making an audio recording of a police encounter. It is only video recording which is singled out for prohibition under this law.[11]

## C.   HB2319 Cannot Withstand Strict Scrutiny.

As a content-based regulation, HB2319 is constitutional only if it withstands strict scrutiny, meaning it "is necessary to serve a compelling state interest" and "is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Strict scrutiny is "an exacting test" requiring "some pressing public necessity, some essential value that has to be preserved; and even then the law must restrict as little speech as possible to serve the goal." *Turner Broad. Sys., et al. v. Fed. Commc'n Comm'n, et al.*, 512 U.S. 622, 680 (1994).

### 1.   HB2319 Is Not Necessary to Serve a Compelling State Interest.

The only possible government interests mentioned in the extremely sparse legislative record are preventing interference with or distractions of law enforcement officers.[12] Assuming, for the sake of argument, that this is a compelling state interest,

---

[11] It should also be noted that in this digital age, the same device can record video as well as still images or just audio at the push of a button, making the content of a person's activity even harder to discern at first glance or without an intrusive examination of that created content.

[12] Representative Kavanagh, HB2319's sponsor, has stated that HB2319 is designed to protect law enforcement officers from distractions, threats, and potential violence while performing their jobs. *See* Arizona House Republication Caucus (February 22, 2022), available                                                                                     at

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

HB2319 is not necessary to serve this interest. Arizona already has other laws at its disposal to address interference with police officers. For example, if a person "obstruct[s]," "impair[s], or hinder[s]" a police officer acting "under color of his official authority," which a person could do by deliberately distracting or threatening the officer, that person can be charged with a class 1 misdemeanor pursuant to A.R.S. § 13-2404. *See also* A.R.S. § 13-2402 (prohibiting a person from "obstructing governmental operations," including by "knowingly obstruct[ing], impair[ing], or hinder[ing]" police officers acting in the scope of their official authority). Various municipalities within Arizona also have their own similar laws prohibiting interference with police. *See, e.g.,* Gilbert City Code § 42-179 ("It is unlawful for any person to hinder, resist, delay, obstruct or prevent police officers in the discharge of or their attempt to discharge their official duties . . ."). If the bystander is being extremely loud and disruptive, they may be committing disorderly conduct, which is also a crime. A.R.S. § 13-2904. In addition, if the person recording is blocking the flow of traffic or pedestrians, an officer can ask them to move—and if the recorder fails to do so, that failure to obey is a crime. See A.R.S. § 28-622. Because Arizona already has statutes addressing interference with police, HB2319 is not "necessary" to serve its asserted State interest.[13] Arizona law enforcement officers have frequently employed these tools to arrest those they believe were interfering with their operations, including journalists and others who were recording video at the time. *See* Raiford Decl. ¶ 10; Burton Decl. ¶ 22; Davis Decl. ¶ 7.

The existence of these other laws shows that HB2319's only target is protected speech. Given that the right to film police is a constitutional right, shielding on-duty officers

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

https://www.azleg.gov/videoplayer/?eventID=2022021121&startStreamAt=331. But there was no factual record to suggest that individuals recording with their cell phones are somehow presenting a threat to officer safety that needs to be addressed with this legislation.

[13] The lack of necessity for this law is made even clearer by the fact that police departments can and do develop policies to guide officers on how to respect the First Amendment right to record their activities while performing their duties. *See, e.g.*, Osterreicher Decl. ¶¶ 17-19. For example, the Tucson Police Department already has such a policy, which focuses not on distance but on whether the person is actually interfering with police activity.

from being filmed against their wishes cannot be a legitimate, much less a compelling, government interest. Indeed, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987). "In our society, police officers are expected to endure significant burdens caused by citizens' exercise of their First Amendment rights," and "[t]he same restraint demanded of police officers in the face of 'provocative and challenging' speech, must be expected when they are merely the subject of videotaping that memorializes, without impairing, their work in public spaces.'" *Glik,* 655 F.3d at 84 (quoting *Hill,* 482 U.S. at 461).

### 2.    *HB2319 Is Not Narrowly Tailored.*

Not only is there no evidence to suggest that this law is necessary, but HB2319 also does not satisfy the narrow-tailoring requirement even if there were, because the statute is both under- and over-inclusive.  The law is over-inclusive because it is in no way limited to the government's purported interest in preventing interference or distraction, which law enforcement officers already have tools to address. As the First Circuit recognized in *Gericke v. Begin*, 753 F.3d 1, 8 (1st Cir. 2014), the First Amendment does not prohibit officers from imposing safety measures where necessary based on the specific circumstances at issue, even if there is an incidental impact on a person recording.  But what it does prohibit is  any video recording based merely on distance, without any measure of, or connection to, actual interference.

The mere presence of a person recording video in public near an officer cannot be deemed interference with that officer's activities.  As the court explained in *Glik*, "peaceful recording of an arrest in a public space that does not interfere with the police officers' performance of their duties is not reasonably subject to limitation." 655 F.3d at 84.  Indeed, a blanket ban on recording video within eight feet—which creates moving bubbles around every officer—is the opposite of the tailored authority that officers already have.[14] Because, as noted above, there are "various other laws at [Arizona's] disposal that would

---

[14] *See* Section D, *infra*.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

allow it to achieve its stated interests while burdening little or no speech," the law is not narrowly tailored. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 949 (9th Cir. 2011) (en banc) (applying intermediate scrutiny). In contrast, HB 2319 would permit the officer to criminalize someone who is standing quietly and video recording where there is no risk of interference whatsoever—only the fact that the officer does not wish to be recorded.[15] HB2319 fails to distinguish between interference, such as physically blocking an entrance that officers need to use to get to a suspect, and merely standing nearby recording.

HB2319 is also under-inclusive. For example, the bill's sponsor mentioned a need to stop someone from coming up behind a lone officer and causing concern or distraction. But this law, which requires a warning before arrest, would not apply to a person who approached the officer from behind—at least not until they were seen and warned and continued recording,[16] and at that point the officer is likely well aware of their presence and their purpose. Moreover, HB2319 prohibits only "video recording[s]" and does not address audio recordings or still photographs of the same content taken from the same distance, or even with the same device, nor does it address a person doing something else on their phone, such as texting a friend about the incident they are watching or recording something other than law enforcement activity from the same spot. In 2022, people routinely walk in public places with their cell phones out. There is no evidence to show that a person holding a cell phone that happens to be recording is an interference with law enforcement activity, while a person walking by on the same sidewalk holding the same phone but texting or taking pictures with it is not. This irrational distinction makes HB2319 impermissibly

---

[15] As noted in Section 1, supra, this is not a legitimate interest and therefore cannot constitute "interference." Speech protected by the First Amendment "may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co.*, 376 U.S. at 268, 270 (marks and citation omitted). The Supreme Court has recognized that the "public interest in a free flow of information to the people concerning public officials" is "paramount." *Garrison v. Louisiana*, 379 U.S. 64, 77 (1964).

[16] This assumes the person hasn't been previously warned.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

under-inclusive—and highlights the law's true purpose:   preventing *recording*, not interference or distraction.  *See generally City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994) ("[T]hat a regulation of speech may be impermissibly underinclusive is firmly grounded in basic First Amendment principles.").

> **D.**   **In the Alternative, Even if this Court Finds the Restriction is Not Content-Based, HB2319 Still Fails to Withstand Scrutiny Under Any Other Applicable Test, Including Time, Place, and Manner Analysis.**

As explained in section A, *infra*, many circuit courts have considered the application of generally applicable laws that prohibit, among other things, recording police—and, while concluding that the laws are (unlike HB2319) content-neutral and thus subject to intermediate scrutiny, the courts have uniformly held that they nevertheless violate the First Amendment.  Whatever the type of enhanced scrutiny the Court uses, HB2319 fails to pass constitutional muster.

Even if this Court does not find the law to be content-based, most of the contexts in which this law will be applied will be in traditional public forums such as public streets and sidewalks.  As the Ninth Circuit laid out in *Comite de Jornaleros*, "[p]ublic streets and sidewalks 'occupy a special position in terms of First Amendment protection.'" 657 F.3d at 945 (quoting *Snyder v. Phelps*, 562 U.S. 443, 456 (2011) (additional citation and quotation marks omitted)).  And laws that "regulate[] protected speech in a public forum" must be "'justified without reference to the content of the regulated speech, [] narrowly tailored to serve a significant governmental interest, and [] leave open ample alternative channels for communication of the information.'" *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).  In addition, such restrictions "must not delegate overly broad discretion to a government official.*" Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1037 (9th Cir. 2006) (citing *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992)).

HB2319 fails all four prongs of this test.  As discussed above, this law is not narrowly tailored and is not necessary to protect any government interest, much less a

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

significant one.  The law also fails to leave open alternate avenues of communication because it is not always possible to get a video from more than eight feet away from law enforcement activity—particularly when police officers are on the move and many other people are present.  *See* Mathews Decl. ¶¶ 6-7, 9-10; Davis Decl. ¶ 8; Burton Decl. ¶ 17; Raiford Decl. ¶¶ 8, 11.  This includes at mass demonstrations and protests, or when other obstacles like cars are in the way of a clear view of the incident.  Mathews Decl. ¶ 7.  And the law gives government officials overly broad discretion to, in effect, create the crime by telling a person to stop recording and then moving within eight feet of that person.

### 1. *An Eight-Foot "Floating Buffer Zone" Does Not Leave Open Adequate Alternative Channels Because of the Difficulty Complying with it.*

The lack of "alternative channels of communication" can be analyzed by considering how difficult, as a practical matter, it would be for a person who desired to record the police in a crowded setting to comply with this law.  In *Schenck*, the Court considered the constitutionality of an injunction entered against abortion protestors, which prohibited people from approaching within 15 feet of a patient seeking an abortion in order to talk to them near clinic entrances.  The Court concluded that "this broad prohibition on speech" violates the First Amendment because it "floats," meaning that it would be very difficult to comply with since a protestor would have to move with the patient they were trying to speak to, and because multiple patients could be present creating multiple overlapping buffer zones.  Both of these problems are present in HB2319 as well:  it places the burden on a person recording to move away from police officers, even as they approach, and it does so not just with respect to one officer but any who are present.

In addition, the *Schenk* Court concluded that the 15-foot buffer zone was too difficult to comply with where the sidewalks were 17 feet wide, because some protestors would have been forced to stand in the street, interrupting the free flow of traffic.  This is equally, if not more, true for HB2319, which would apply an eight-foot buffer zone not only at stationary locations, but anywhere where law enforcement activity is occurring across the

state—including where sidewalks are only four to five feet wide.  *See* Walkways, Sidewalks, and Public Spaces, FHWA COURSE ON BICYCLE AND PEDESTRIAN TRANSPORTATION, available at

 https://safety.fhwa.dot.gov/ped_bike/univcourse/pdf/swless13.pdf.

Rep. Kavanaugh publicly stated that the eight-foot limit was derived from another Supreme Court case related to abortion protestors, *Hill v. Colorado*, 530 U.S. 703, 707 (2000)—but that case is distinguishable.  In *Hill*, the Court upheld a Colorado statute which "makes it unlawful within the regulated areas for any person to 'knowingly approach' within eight feet of another person, without that person's consent, 'for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person . . . .'"  Unlike HB2319—and the law struck down in *Schenk*—this Colorado law allowed the speaker to stay stationary, and if another person walked toward them, there would be no violation.  In other words, "the 'knowingly approaches' requirement in the Colorado statute allows a protester to stand still while a person moving toward or away from a health care facility walks past her."  *Id.* at 713. Indeed, a law that did not contain this requirement would lead to absurd results, because it would allow any patient to drive off protestors that she did not like, merely by walking within eight feet of them and then demanding that they be arrested for violating the law – even though the patient themselves caused the violation.  That is exactly the problem this law creates—the officer can create the crime.  Where a group of police officers making an arrest do not want to be recorded, one officer from that group can order a halt to recording, move towards the person recording and, as soon as that officer comes within eight feet of the person, immediately find them in violation of the law and subject to arrest—even though it is the officer's approach that triggered the alleged violation.

The legislature's attempt to limit this problem by adding a provision that the ban on recording only applies to "law enforcement activity," circularly defined to include "enforcing the law," does not solve the problem.  The officer who moves towards the recorder can still claim to be involved in an "arrest," "questioning a suspicious person," or

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

any other "enforc[ement]".  Multiple officers will almost always be present at the scene of an arrest to provide backup or run a records check of the person being arrested.  Even if the eight-foot limit could be workable for a single officer and a single recorder (which Plaintiffs do not concede), it fails to take into account that officers are often working in groups, and that those recording are often part of a crowd.  For example, a journalist covering a protest march may wish to record protestors as they walk down the street and may be walking by a line of police standing along the sidewalk or formed to separate adversarial protestors.  There would be no way for the journalist—or a participant in the march exercising their right to record police—to ensure that they are eight feet away from every officer as they walk by.

## 2. *HB2319 gives too much discretion to individual officers.*

HB2319 gives officers overly broad discretion to determine who may record within eight feet of them.  It does so through the requirement of a warning, either at that time or "previously," although the law does not specify how long beforehand the warning must have taken place.  This gives too much discretion to a government official, in this case the individual officer.[17]  It provides no guidance whatsoever for the officer to use in exercising their discretion to determine who may, and who may not, record within eight feet of them.  *Cf. Seattle Affiliate of Oct. 22nd Coal. to Stop Police Brutality, Repression & Criminalization of a Generation v. City of Seattle*, 550 F.3d 788, 798 (9th Cir. 2008) ("To determine whether the Ordinance impermissibly grants the licensing official unduly broad discretion, we consider whether the language of the Ordinance contains adequate standards

---

[17] Similarly, "the United States is concerned that discretionary charges, such as disorderly conduct, loitering, disturbing the peace, and resisting arrest, are all too easily used to curtail expressive conduct or retaliate against individuals for exercising their First Amendment rights." U.S. Department of Justice Statement of Interest at 1-2 in *Garcia v. Montgomery County*, No. 12-cv-03592-JFM (D. Md.).

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

to guide the official's decision and render it subject to effective judicial review." (brackets and quotation marks omitted)).[18]

**E.      HB2319 Is Unconstitutionally Vague.**

This Court should enjoin enforcement of HB2319 for the independent and equally dispositive reason that it is unconstitutionally vague in violation of the First and Fourteenth Amendments.  A statute violates due process, and is thus void for vagueness, if it:

> (1) fails to give a 'person of ordinary intelligence a reasonable opportunity to know what is prohibited;' (2) 'impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application;' or (3) 'abut(s) upon sensitive areas of basic First Amendment freedoms, [ ] operat[ing] to inhibit the exercise of (those) freedoms.'"

*Hunt v. City of L.A.*, 638 F.3d 703, 712 (9th Cir. 2011) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).  Where, as here, *see* Section I *supra*, " first amendment freedoms are at stake, an even greater degree of specificity and clarity of laws is required."  *Kev, Inc. v. Kitsap Cty.*, 793 F.2d 1053, 1057 (9th Cir. 1986).  Here, HB2319 runs afoul of *each* of the criteria for being unconstitutionally vague.

First, the law is too vague to convey how someone must comply to avoid violating it.  The statute prohibits recording after the person "has previously received a verbal warning from a law enforcement officer" to stop recording, but does not provide any guidance as to what time frame qualifies as "previously."  Is it five minutes? An hour?  A day?  Does the warning have to be from an officer involved in the activity being recorded?  What if another officer arrives after the "no recording" order is given and tells the videographer to go ahead and start recording again?  These issues enhance the chill on the exercise of First Amendment rights that HB2319 creates.  *See* Mathews Decl. ¶ 9 (describing incident where different law enforcement officers gave contradictory

---

[18] This excessive discretion could encourage impermissible viewpoint-based enforcement by officers.  For example, if an officer chooses to warn a person protesting police misconduct against recording within eight feet of them, but gives no such warning to a counter-protestor at the same demonstration, only the former person is committing a crime and subject to arrest.  This is classic viewpoint discrimination and a clear constitutional violation.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

instructions to journalists while dispersing protestors); Burton Decl. ¶ 20 (because it is unclear what a "previous" no-recording order would be, "it will be difficult if not impossible to train our reporters on compliance with HB2319").

As mentioned *supra*, the statute also defines "law enforcement activity" as including "enforcing the law." Does that mean anything a law enforcement officer does? If an officer is simply patrolling, is that a "law enforcement activity" subject to a prohibition on video recording when ordered not to? *See id.* ¶ 19 (because of this ambiguity, "reporters may be instructed to comply with the broadest possible reading, which will further limit *The Republic*'s ability to engage in First Amendment-protected activity").

Second, the law gives unbounded authority to law enforcement officers to arrest people who are doing nothing more than recording video of police activities. As noted above, HB2319 allows officers to pick and choose when to issue a "no recording" order and whom to arrest for violating that order. It contains no standards—indeed, no limiting principles whatsoever—regarding when an order to stop recording should be given and how to determine whether a violation has taken place, leaving those decisions up to officers' arbitrary or capricious whims. This is a statute that is void for vagueness because on its face it fails to "set reasonably clear guidelines for law enforcement officials" and thus allows "policemen . . . to pursue their personal predilections." *Smith v. Goguen*, 415 U.S. 566, 573, 575 (1974) (citation omitted). *See also* Raiford Decl. ¶ 10 (describing "targeted arrests" of people filming police officers during demonstration).

Take, for example, an instance where a journalist from a news outlet that a police officer does not like and another random person are standing side-by-side and recording video of law enforcement activity. The officer can issue a no-recording order, chase down the journalist, and arrest them, while ignoring the bystander, even though neither one was presenting any danger to, or interference with, any law enforcement activity. Even more disturbingly, it would allow officers to demand that all video recording cease so they can act with impunity in wrongdoing. *See id.* ¶ 15 (describing personal practice of recording police interactions to deter unlawful arrest). Vesting such unfettered power in government

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

officials to shield their misconduct from the public should terrify anyone who values liberty.  Journalists and non-journalists alike have a constitutional right to record law enforcement activities in public places without fear of arrest under such a vague law of menacing potential.

Third, it is hard to imagine a stronger way the law could "operate to limit" the First Amendment right to record on-duty police officers than criminalizing its exercise.  Because HB2319 "furnishes a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure,'" it violates the Constitution and should be enjoined.  *Papachristou v. City of Jacksonville*, 405 U.S. 156, 170 (1972).

## II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION.

It is well settled that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" for purposes of the preliminary injunction analysis.  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  See also *Am. Beverage Ass'n v. City & Cty. of San Francisco*, 871 F.3d 884, 898 (9th Cir. 2017) (following *Elrod*).  It is clear that the statute will chill the exercise of First Amendment rights and hamper the plaintiff news organizations' First Amendment rights to provide news to the public.  *See* Burton Decl. ¶¶ 18-22; Mathews Decl. ¶¶ 5-11; Davis Decl. ¶ 9; Osterreicher Decl. ¶ 42; Raiford Decl. ¶¶ 17-19.  Moreover, as the attached declarations demonstrate, it is impossible to determine how much protected expression and association will be chilled by HB2319.  *See Ams. for Prosperity Found. v. Harris*, 182 F. Supp. 3d 1049, 1059 (C.D. Cal. 2016) ("[T]he government causes 'irreparable injury' when, as here, it places individuals 'in fear of exercising their constitutionally protected rights of free expression, assembly, and association'") (quoting *Allee v. Medrano*, 416 U.S. 802, 814–15 (1974)).  A preliminary injunction is necessary to prevent these significant constitutional harms.  *See*

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Osterreicher Decl. ¶ 42; Mathews Decl. ¶ 5-11; Burton Decl. ¶¶ 18-22; Davis Decl. ¶ 9; Raiford Decl. ¶¶ 17-19.

## III.   THE BALANCE OF EQUITIES AND PUBLIC INTEREST TIP SHARPLY IN PLAINTIFFS' FAVOR.

As the Ninth Circuit recently observed, "public access plays a significant positive role in the functioning of our democracy. . . . Indeed, the public became aware of the circumstances surrounding George Floyd's death because citizens standing on a sidewalk exercised their First Amendment rights and filmed a police officer kneeling on Floyd's neck until he died." *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 830-31 (9th Cir. 2020) (denying a stay pending appeal of a lower court injunction ordering federal law enforcement to cease targeting journalists and legal observers for arrest).  The Third Circuit pointed out that the increase in smartphone videos of police interactions with the public "has contributed greatly to our national discussion of proper policing." *Fields*, 862 F.3d at 357-58 (3d. Cir. 2017).  As the United States Department of Justice noted, "[t]he right to record police officers while performing duties in a public place . . . [is] not only required by the Constitution.  [It is] consistent with our fundamental notions of liberty, promote[s] the accountability of our governmental officers, and instill[s] public confidence in the police officers who serve us daily."  Statement of Interest of the United States, *Sharp v. Baltimore City Police Dept., et al.*, No. 1:11-cv02888 (D. Md. Jan. 10, 2012), ECF No. 24.

In contrast to the irreparable harm HB2319 would inflict on Plaintiffs, other journalists, and the public, the issuance of a preliminary injunction in this case poses little, if any, risk of irreparable harm to Defendants' legitimate interests.  As discussed *supra*, Arizona law enforcement officers have plenty of tools at their disposal to deal with people who actually interfere with or endanger them.  By contrast, the Ninth Circuit has "consistently recognized the 'significant public interest' in upholding free speech principles as the 'ongoing enforcement of the potentially unconstitutional regulations would infringe not only the free expression interests of plaintiffs, but also the interests of other people'

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

subjected to the same restrictions." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (internal citations omitted).  Indeed, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks omitted).  In such cases, "[t]he balance of equities and the public interest thus tip sharply in favor of enjoining the [offending statutory provision]."  *Klein*, 584 F.3d at 1208; *see also Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) ("The fact that the plaintiffs have raised serious First Amendment questions compels a finding that . . . the balance of hardships tips sharply in [the plaintiffs'] favor") (internal quotation marks omitted).

## Conclusion

For the foregoing reasons, Plaintiffs' request for expedited oral argument should be granted and a hearing on this Motion scheduled as soon as possible; this Motion for Preliminary Injunction should be granted; and the Court should enter an order enjoining enforcement of HB2319.  Proposed orders are attached.

DATED this 23rd day of August, 2022.

BALLARD SPAHR LLP

By:    /s/ Matthew E. Kelley
    David J. Bodney
    Matthew E. Kelley
    Kennison Lay
    1 East Washington Street, Suite 2300
    Phoenix, AZ 85004-2555
    *Attorneys for Plaintiffs [INSERT]*

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF ARIZONA

By:    /s/ Jared G. Keenan
    K. M. Bell
    Benjamin Rundall
    Jared G. Keenan
    3707 North 7th Street, Suite 235
    Phoenix, AZ 85014

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

Esha Bhandari*
Vera Eidelman*
Shreya Tewari*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
* *pro hac vice* application forthcoming

*Attorneys for Plaintiff American Civil
Liberties Union Foundation of Arizona*

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

## <u>**CERTIFICATE OF SERVICE**</u>

3        I hereby certify that on this 23rd day of August, 2022, copies of the attached Motion

4  for Preliminary Injunction, supporting documents and proposed Orders, and the Complaint

5  and supporting documents, were served on Defendants via personal service, as follows:

6

7        Attorney General Mark Brnovich
         Office of the Attorney General
8        2005 N. Central Avenue
         Phoenix, AZ 85004

9        Maricopa County Clerk of the Board of Supervisors
         301 West Jefferson Street, #10
10       Phoenix, AZ 85003

11       Maricopa County Attorney Rachel Mitchell
         Office of the Maricopa County Attorney
12       225 West Madison Street
         Phoenix, AZ 85003

13
         Maricopa County Sheriff Paul Penzone
14       Office of the Maricopa County Sheriff
         550 West Jackson Street
15       Phoenix, AZ 85003

16

17

18  _/s/ Matthew E. Kelley_
    Matthew E. Kelley

19

20

21

22

23

24

25

26

27

28

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400