**MARK BRNOVICH**
**ATTORNEY GENERAL**
Robert J. Makar (No. 33579)
 *Assistant Attorney General*
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-5200
Robert.Makar@azag.gov

*Attorneys for Mark Brnovich,*
*Arizona Attorney General*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| *Arizona Broadcasters Association, et al.,* | |
| Plaintiffs, | Case No: CV-22-01431-PHX-JJT |
| v. | |
| | **ATTORNEY GENERAL'S RESPONSE** |
| *Mark Brnovich, et al.,* | **TO PLAINTIFFS' 12(C) MOTION (Doc.** |
| | **54)** |
| Defendants. | |

Defendant Mark Brnovich, in his official capacity as Attorney General for the State of Arizona (the "Attorney General"), responds in opposition to Plaintiffs' Motion for Judgment on the Pleadings (the "Motion," Doc. 54).

### INTRODUCTION

Given Plaintiffs' deficient pleadings and the Attorney General's denials in his answer, Plaintiffs cannot establish (1) Article III standing, (2) ripeness, either as a matter of Article III or prudentially, or (3) that the Attorney General is amenable to suit under *Ex Parte Young.* For all of these reasons, Plaintiffs' Rule 12(c) motion should be denied.

### PROCEDURAL HISTORY

Plaintiffs brought suit on August 23, challenging HB 2319 (the "Act") as unconstitutional under the First Amendment. Plaintiffs named three defendants: the Attorney General, Rachel Mitchell, in her official capacity as Maricopa County Attorney, and Paul Penzone, in his official capacity as Maricopa County Sheriff. Doc. 1. Plaintiffs moved for a preliminary injunction against the Act. Doc. 24. No Defendant moved to defend the Act on the merits, while the Attorney General asserted he was not a proper Defendant in this matter and committed to providing notice to the President of the Arizona State Senate and the Speaker of the Arizona House of Representatives. Doc. 29.

This Court set a September 16 deadline for any interested party to move to intervene in this case and defend the Act on the merits. None did. To address "concerns that [Plaintiffs'] request for a declaratory judgment may require an Answer so that judgment can be issued on the pleadings under Rule 12(c)," (Doc. 45) this Court held a status conference following the parties' joint request on October 20 and ordered that any Answer was due by 5:00 pm on October 24. Doc. 50. Only the Attorney General filed an answer. Doc. 51.

In an order issued November 22, this Court foreshadowed resolution of the unusual posture of this matter via voluntary default by a subset of parties, "with the Court's express conclusion that in such circumstance, a default would not be taken due to any failing of counsel's duties of professional responsibility, but rather by election of

their clients not to defend." Doc. 52. Because the Attorney General elected to file an Answer, while other Defendants did not, this Court prescribed "two tracks" for this matter. *Id.* First, Plaintiffs were ordered to move for default as to the county Defendants by November 29. *Id.* Second, Plaintiffs were instructed to either move for judgment against the Attorney General "or file a notice indicating that the matter is ready for a Rule 16 Scheduling conference" by December 9.

On November 28, Plaintiffs filed both a motion for default against the county Defendants, and the instant 12(c) Motion for Judgment on the Pleadings against the Attorney General. This brief responds to that motion.

## ARGUMENT

The Attorney General's Answer asserts the affirmative defense that he is not properly named as a Defendant in this matter, as Plaintiffs fail to supply non-speculative allegations of a threat of his enforcement of the Act. Doc. 51 at 7 ¶64. The Attorney General has asserted that defense consistently throughout this action, including in his Notice of Non-Opposition to Plaintiffs' Motion for Preliminary Injunction. Doc. 29.

The instant Motion largely relies on Plaintiffs' theory that they "need [only] to show that the Attorney General *could* enforce [the Act]." Motion at 1 (emphasis original) (citing *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003) ("threat is latent in the existence of the statute")). Not so. Article III demands "there must be a 'genuine threat of imminent prosecution.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). *Getman*, for its part, was only reversing a denial of standing based on the district court's finding of the absence of an *actual, stated threat* by defendants. *Id.* at 1094 ("California 'is not investigating CPLC for any possible violations of the PRA, and has not threatened CPLC with prosecution.'")

Plaintiffs contested the Attorney General's affirmative defense more fulsomely in their Reply supporting their Motion for a Preliminary Injunction (Doc. 37), although still based on their misreading of *Getman*. Wholly absent in this matter is any non-speculative

2

threat of enforcement *by* the Attorney General—as he completely lacks freestanding authority to enforce the Act.

A non-speculative threat of enforcement of the Act is critical for this Court's Article III jurisdiction, in several dimensions. Without it, Plaintiffs' claims against the Attorney General fail for lack of constitutional and prudential ripeness. The threat of action by the Attorney General is also integral to meeting the requirements of the *Ex Parte Young* exception to Eleventh Amendment immunity. Finally, based on the parties before the Court, freestanding claims against the Attorney General fail for lack of redressability: any scope of relief *vis a vis* the Attorney General would be manifestly hollow. Of the 15 county attorneys actually empowered to enforce the Act: (1) the only one named will be enjoined from referring any prosecutions to the Attorney General and (2) the other 14 will be entirely free to enforce the Act no matter how this Court resolves this action.

In resolving a Rule 12(c) motion, "[a]ll allegations of fact by the party opposing the motion are accepted as true and are construed in the light most favorable to that party." *Unite Here Local 30 v. Sycuan Band of the Kumeyaay Nation*, 35 F.4th 695, 700 (9th Cir. 2022) (quoting *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989)).

## I.   PLAINTIFFS' 12(C) MOTION IS FORECLOSED BY BINDING PRECEDENT IN THIS POSTURE

"[U]nder Federal Rule of Civil Procedure 12(c), a plaintiff is not entitled to judgment on the pleadings if the defendant's answer raises issues of fact or affirmative defenses." *Pit River Tribe v. BLM*, 793 F.3d 1147, 1159 (9th Cir. 2015). The Attorney General's affirmative defense is a sufficient basis to deny the Motion. Doc. 51 at 7 ¶64.

Plaintiffs' motion appears to be premised on their putative authority to overrule the Attorney General's denials and obtain relief by contravening them. But that is not how Rule 12(c) motions work.

## II.      PLAINTIFFS LACK STANDING FOR CLAIMS AGAINST THE ATTORNEY GENERAL

### A.      Plaintiffs' Claims Lack Constitutional Ripeness

To establish Article III ripeness, Ninth Circuit precedent demands a "'genuine threat of imminent prosecution,'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). But Plaintiffs have not even plead a genuine threat of enforcement by the Attorney General. And, even if they had, the Attorney General has denied that any such threat exists as a factual matter—a denial that precludes judgment on the pleadings under Rule 12(c).

Plaintiffs first assert that no threat beyond the mere existence of the Act is necessary, relying on their interpretation of dicta in *Getman*. Plaintiffs' novel theory is wrong, First Amendment jurisprudence cannot waive the bedrock requirements of Article III. *Supra* at 2.

Plaintiffs' remaining allegations that the Attorney General threatens enforcement of the Act, external to the Act itself, comprise two theories.[1]

The first theory, the grand jury statute, permits charging of criminal wrongdoing based on county attorney referral with the Attorney General's approval. A.R.S. § 21-422(B)(8) (grand jury may investigate and return for indictment "criminal wrongdoing that is referred in writing by a county attorney and that is accepted in writing by the attorney general"). By its plain language, this requires the initiation of enforcement by a

---

[1]  Plaintiffs' throwaway assertion (Doc. 37 at 3) that the Attorney General does not deny he is the "chief law enforcement official of Arizona" is an insufficient allegation of threatened enforcement, and is not further supported. Even if he is the chief law enforcement officer, it is undisputed that he is *completely* without power to enforce the Act absent the actions of either (1) non-joined parties or (2) a party joined here (MCAO) that will presumably be enjoined from any referrals.

Plaintiffs' *ipse dixit* assertion on this point that is even less worthy of credence. Motion at 1 n.2 (Answer does not admit Plaintiffs' legal conclusion). The Ninth Circuit has made plain that "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Snoeck v. Brussa*, 153 F.3d 984, 986-87 (9th Cir. 1998).

4

county attorney. The Attorney General may not bring a freestanding enforcement action under that statute.

Plaintiffs' second theory, assisting county attorneys, is even further afield. A.R.S. § 41-193(A)(5)[2] (Attorney General shall "At the direction of the governor, or if deemed necessary, assist the county attorney of any county in the discharge of the county attorney's duties"). The Attorney General's ability to assist an impeded county attorney at the direction of the governor is multiple degrees further attenuated from any enforcement action, and again is contingent on the actions of third (non)parties.

### B.    Plaintiffs' Claims Lack Prudential Ripeness

"A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted). The only theories of Attorney General enforcement of the Act proffered by Plaintiffs are contingent on the entirely-speculative actions of third parties. Here are there are no plausible, non-speculative allegations that (1) the Attorney General could initiate enforcement on his own (he can't) or (2) that non-enjoined County Attorneys would refer prosecution to him *instead of* enforcing the Act themselves, *and* that the Attorney General would accept.

### C.    Plaintiffs Cannot Satisfy Traceability Or Redressability As To The Attorney General

A plaintiff lacks standing where "threat of future harm to [plaintiffs] [wa]s based upon an extended chain of highly speculative contingencies." *Nelsen v. King County*, 895 F.2d 1248, 1252 (9th Cir. 1990). Plaintiffs do not provide any alleged causal chain beginning with the Act and ending with the Attorney General initiating an enforcement action against Plaintiffs.

Moreover, "'[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court.'" *Yazzie v. Hobbs*, 977 F.3d 964, 967 (9th Cir. 2020); *accord Lujan v. Defs. of Wildlife*, 504 U.S. 555, 571 (1992) (Plaintiffs lacked standing where it

---

[2]  Mistakenly cited as A.R.S. § 41-493 in Plaintiffs' Reply (Doc. 37).

was "entirely conjectural whether the [non-defendant] activity that affects [plaintiffs] will be altered or affected" by favorable outcome).

Given that fully 14 of 15 actual enforcers of the Act remain *completely unenjoined* even if Plaintiffs' prevail on their claims against the Attorney General, any relief would be precisely the sort of hollow relief that *Yazzie* holds is insufficient to establish Article III redressability.

The problem is in relief here, as Plaintiffs *have* named a party that can enforce the Act: Maricopa County officials. A favorable ruling against county officials could redress Plaintiffs' alleged injuries in Maricopa County. An enjoined County Attorney could not refer, or be assisted in enforcement actions by the Attorney General. But such an injunction would not redress possible injuries in other counties. And such an injunction, if applied additionally against the Attorney General, would not alter the scope of Plaintiffs' redress at all: only named county officials would be enjoined, and the other counties remain unfettered in their ability to bring enforcement actions. Plaintiffs do not allege that a referral to the Attorney General or his "assistance" to the enforcing county official is necessary for a realized enforcement action (it is not). Nor do Plaintiffs allege that county officials are the Attorney General's agents, successors, or assigns as pertains to the Act (they are not).

## III.    THE ATTORNEY GENERAL ENJOYS SOVEREIGN IMMUNITY

As a general matter, all state officials enjoy sovereign immunity. *See*, *e.g.*, *Alden v. Maine*, 527 U.S. 706, 747 (1999) ("[S]overeign immunity bars relief against States *and their officers*[.]" (emphasis added)). *Ex Parte Young* recognizes a "narrow exception" to that immunity. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 76 (1996); *accord Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 114-15 & n.25 (1984) (explaining that "*Young* is a fiction that has been narrowly construed"). Plaintiffs' Complaint does not fall within that narrow exception, however.

Under *Ex Parte Young*, sovereign immunity is not a bar to suit against "an official who *acts unconstitutionally* [because the official] is [thereby] 'stripped of his official or

representative character[.]'" *Pennhurst*, 465 U.S. at 104 (emphasis added). Indeed, the Supreme Court has repeatedly stressed that the *Ex Parte Young* exception only applies where either the state officers *actually act* in an unconstitutional manner,[3] or "threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992).[4]

In stark contrast here, the Attorney General is not alleged to have done *anything*, or to have threatened to initiate *any* enforcement action. Each of Plaintiffs' theories of "possible" enforcement by the Attorney General is contingent on actual enforcement by a third party. Doc. 37 at 3, *supra* at 4-5.

The Attorney General has no authority to initiate such enforcement actions, and instead can only take action under those statutes at the request of third parties. Plaintiffs cite no cases where *Ex Parte Young* was satisfied where the potential enforcement actions identified in the complaint could only be initiated by unnamed parties.[5]

---

[3] *See Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (*Young* "permits suits for prospective injunctive relief against state officials *acting in violation of federal law*" (emphasis added)); *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993) (*Young* permits some suits "against state officials in federal court challenging the constitutionality *of official conduct* enforcing state law." (emphasis added)); *see also In re Ellett*, 254 F.3d 1135, 1138 (9th Cir. 2001) ("To be entitled to relief under *Ex Parte Young*, then, [plaintiff] must allege that [defendant] … *is engaging in a course of activity in violation of federal law*." (emphasis added)).

[4] *Accord Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015) ("[F]ederal courts may in some circumstances grant injunctive relief against state officers *who are violating, or planning to violate*, federal law." (emphasis added)); *Steffel v. Thompson*, 415 U.S. 452, 464–65 (1974) (*Young* "hold[s] that state officials *who threaten to enforce an unconstitutional state statute* may be enjoined by a federal court" (emphasis added)).

[5] Plaintiffs also cite *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004). But in that case the court found that the Idaho Attorney General was not immune because he had the unilateral statutory authority to deputize himself into the role of county prosecutor. *Id.* at 912, 920. But the Arizona Attorney General possesses no such authority. A.R.S. § 41-193(A)(5) permits only "assistance" for county attorneys, further conditioned on "necessity" or the order of the Governor. *Supra* at 5.

Plaintiffs do engage with *Ex Parte Young* in the Motion. They are correct that the Attorney General's claim of nominal status is not relevant to the analysis. Motion at 2. They are not correct that seeking "only prospective equitable relief from a federal constitutional violation" is sufficient to render the Attorney General a proper defendant, and they do not further develop this argument. *Id.* Absent Plaintiffs' claims meeting the requirements of *Ex Parte Young*, the Attorney General enjoys sovereign immunity that precludes relief against him. That is just so here.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Rule 12(c) Motion should be denied.

RESPECTFULLY SUBMITTED this 8th day of December, 2022.

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By: s/ Robert J. Makar
Robert J. Makar (No. 33579)
 *Assistant Attorney General*
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-5200
Robert.Makar@azag.gov

*Attorneys for Mark Brnovich, Arizona Attorney General*

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on this 8th day of December, 2022, I caused the foregoing

3

document to be electronically transmitted to the Clerk's Office using the CM/ECF

4

System for Filing, which will send notice of such filing to all registered CM/ECF users.

5

6

_s/ Robert J. Makar_

7

Robert J. Makar

8

*Attorney for Mark Brnovich,*

9

*Arizona Attorney General*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28